OPINION OF THE COURT
David Goldstein, J.
This is a motion by third-party defendant Foster-Forbes Glass Division (Foster) for summary judgment dismissing the third-party complaint.
The action was brought to recover for personal injuries sustained on June 13, 1984, when a glass seltzer bottle, with a Key Food brand label, exploded in plaintiff’s hand while she was shopping at a Key Food store owned and operated by defendant Mik-Lee Food Stores, Inc. (Mik-Lee).
The complaint, sounding in negligence and strict liability, also names as defendants Canada Dry Corporation (Canada Dry) — the bottler and distributor of Key Food brand seltzer, and Container General Corporation (Container) — the alleged manufacturer of the glass bottle which exploded, resulting in injury to the plaintiff. A third-party action by Container against several other bottle manufacturers, including Foster, seeks contribution or indemnity based upon negligence, breach of warranty and strict tort liability.
Canada Dry purchases 28-ounce glass bottles from Container and from the third-party defendant manufacturers, which it fills with seltzer and distributes to Mik-Lee under the Key Food label. Although the bottle fragments and bottle cap were discarded by Mik-Lee employees shortly after the accident, other bottles on the same shelf, next to the one which exploded, bore the same Key Food label and, after examination of one by an expert, was found to have been manufactured by Container.
Third-party defendant Foster moves for summary judgment dismissing Container’s third-party complaint, alleging that there is no proof to establish any claim over based upon either contribution or indemnity. The supporting affidavit alleges that, during 1983 and 1984, Foster did not sell, distribute or supply any glass bottles to Container. That statement, how *158 ever, is irrelevant to the issues raised in the action. On this record, there is no claim that any of the third-party, defendants, all manufacturers of glass bottles, sold or supplied bottles to Container, who also manufactures such bottles. The third-party pleading alleges that the other manufacturers supplied bottles to Canada Dry, who filled them and furnished seltzer water to Key Food. Thus, the supporting affidavit is without probative value.
In any event, despite the insufficiency of the moving papers, I conclude that neither contribution nor indemnity is available here.
Contribution or apportionment of liability among multiple tort-feasors requires a determination of the relative fault of two or more wrongdoers — joint, successive or independent. Liability attaches as a result of the duty which each owes to the plaintiff or to each other, the breach of which makes them responsible for a proportionate share of plaintiff’s loss (Ravo v Rogatnick, 70 NY2d 305, 312; Rosado v Proctor & Schwartz, 66 NY2d 21, 23-24; Trustees of Columbia Univ. v Mitchell/ Giurgola Assocs., 109 AD2d 449, 454; Garrett v Holiday Inns, 86 AD2d 469, mod on other grounds 58 NY2d 253). Each is obligated for a ratable portion of the total damages, based upon their relative responsibility for the loss or injury.
Indemnity, however, is different. It involves a shifting of the entire loss, by a party held legally liable, to another, who, in fairness, ought to pay (Rosado v Proctor & Schwartz, supra, at 24; Trustees of Columbia Univ. v Mitchell/Giurgola Assocs., supra, at 451; Smith v Hooker Chem. & Plastics Corp., 83 AD2d 199, 200-201). These and other cases recognize two kinds of indemnity — (1) express, based upon an express agreement (Levine v Shell Oil Co., 28 NY2d 205; Margolin v New York Life Ins. Co., 32 NY2d 149; Vey v Port Auth., 54 NY2d 221; Garrett v Holiday Inns, supra, at 470) or, (2) implied, "based upon the laws’ notion of what is fair and proper as between the parties legally liable”, i.e., to prevent unjust enrichment and avoid an unfair result (Garrett v Holiday Inns, supra, at 470; Rosado v Proctor & Schwartz, supra). As was observed in Trustees of Columbia Univ. v Mitchell/Giurgola Assocs. (supra, at 451): "Indemnity involves an attempt to shift the entire loss from one who is compelled to pay for a loss, without regard to his own fault, to another party who should more properly bear responsibility for that loss because it was the actual wrongdoer.”
*159 The doctrine of implied indemnity, essentially a restitution concept, has its origins in principles of equity and fairness, in recognition of the fact that one who is compelled to pay for the wrong of another ought to be permitted to recover, from the actual tort-feasor, the damages paid to the injured party. The principle has been applied in those cases where one who is vicariously liable is allowed to recover over against the party actively and primarily responsible (see, e.g., Rogers v Dorchester Assocs., 32 NY2d 553; Smith v Hooker Chem. & Plastics Corp., supra). In such situations, it must be found that the parties breached a duty to the plaintiff and, in addition, that there existed a duty to indemnify between them (Rosado v Proctor & Schwartz, supra, at 24; Garrett v Holiday Inns, supra, at 471; Smith v Hooker Chem. & Plastics Corp., supra, at 202).
In our case, the facts presented do not afford to Container a right of either contribution or indemnity as against the other bottle manufacturers. These parties are neither joint nor successive tort-feasors. The critical issue here is whether this was Container’s bottle, and liability, in terms of the manufacturer, will turn on that determination. Nor is it claimed that there was any express agreement or contract by which the third-party defendants became bound to indemnify Container.
Similarly inapplicable here is implied indemnity. Under the facts set forth in the pleadings, the third-party defendant manufacturers did not breach any duty to the plaintiff and owed no duty to indemnify Container, whom plaintiff claims manufactured and supplied the subject bottle. At trial, the jury will determine whether the bottle was manufactured and furnished to Canada Dry by Container and plaintiff’s claim, in terms of the manufacture or distribution of the product, will rise or fall upon that determination. Should the jury conclude that there was a defect and that Container was the manufacturer, this could support a verdict in favor of the plaintiff. On the other hand, a finding that it was not Container’s bottle would sustain in a verdict in favor of that defendant, dismissing the complaint against it. In either case, there would be no claim over by Container against the other bottle manufacturers, where, as here, plaintiff has specifically alleged manufacture, sale and distribution by a particular party defendant and none other.
In other words, it will be for the trier of the facts to determine whether or not Container was negligent or other *160 wise "at fault” in terms of the strict tort liability claim, i.e., whether it placed a defective product on the market, thereby breaching a duty to those who may use and become injured as a result of the defect. A finding against Container would preclude such party found to be "at fault” from any third-party claim based upon implied indemnity (see, Rosado v Protor & Schwartz, 106 AD2d 27, 28-29, affd 66 NY2d 21, supra; Trustees of Columbia Univ. v Mitchell/Giurgola Assocs., supra, at 453). In contrast, a verdict in favor of Container, that the bottle was not manufactured, distributed or sold by it, would likewise not give rise to an implied indemnity claim vis-á-vis the third-party defendants, since plaintiff elected to proceed only as against Container as the manufacturer and not against any of the other Canada Dry suppliers.
Although not addressed by the parties, in terms of contribution, implicit in the third-party complaint is the concerted action theory (Hymowitz v Lilly & Co., 73 NY2d 487; Bichler v Lilly & Co., 55 NY2d 571), which must be addressed on this motion for summary judgment.
The concerted action theory is applicable in certain personal injury cases where the precise wrongdoer cannot be identified. The principle, in the main, imposes joint and several liability upon those who participated in a common plan or design to commit a tortious act (Prosser and Keeton, Torts § 46, at 323 [5th ed]; Bichler v Lilly & Co., supra, at 580-581). The doctrine has long been held applicable to drag racing cases (De Carvalho v Brunner, 223 NY 284; Finn v Morgan, 46 AD2d 229), was discussed in the context of an action for injuries from an exploding beer bottle, allegedly manufactured pursuant to industry-wide standards (Centrone v Schmidt & Sons, 114 Misc 2d 840), and has received recent attention in both Bichler and Hymowitz (supra) in terms of liability as a result of the ingestion of DES during pregnancy. Essentially, the doctrine operates to shift the burden to the defendants to establish the propriety of their adherence to an industry-wide standard, whether in terms of design, manufacture or adequate testing and warnings.
In our case, however, plaintiff did not proceed on that theory but instead, elected to institute suit only as against Container as the manufacturer of the alleged defective bottle. In defense, as was done in Centrone (supra), defendant has joined, as third-party defendants, the other bottle manufacturers who sold, distributed or supplied bottles to Canada Dry. Although not raised on the record before me on this motion, *161 the question posed, which appears to be one of apparent first impression, is whether, in this manner, a defendant may effectively change the underlying theory by which the injured party has proceeded.
This, in my view, would be improper in the context in which the issue appears in this action. It would unnecessarily convert a relatively simple, well-defined negligence and products liability action into a complex litigation, involving a searching inquiry as to compliance with industry standards in terms of the adequacy of the manufacturing process in relation to 28-ounce glass bottles.
As far as appears, plaintiff has proceeded on a theory that what is involved here is a single defectively manufactured bottle. Whether that can be established and further, whether it can be sufficiently shown that the bottle was manufactured, distributed or supplied by Container, are matters which must await the trial. Plaintiff has not, however, sought to condemn the entire industry in terms of the general manufacturing process.
In these circumstances, where a plaintiff has proceeded against only one manufacturer, on a relatively simple claim that there was a defect in that party’s product which resulted in injury, and not against the industry as a whole, the concerted action theory should not apply. The principle is applicable, in the first instance, to the plaintiff, not to a defendant, who would thereby be permitted to shift the focus of attention from the propriety of its actions to those of the industry and effectively change the nature of the case. The doctrine may be invoked in a proper case to aid an injured plaintiff who, without it, in all probability, could not make out a prima facie case because the identity of the wrongdoer cannot be established. In this light, the principle should be inapplicable where, as here, plaintiff claims it can (1) identify the particular wrongdoer and, (2) establish the defective nature of the product.
Although the Court of Appeals in Bichler v Lilly & Co. (supra, at 581) recognized that a plaintiff could pursue a remedy against one joint tort-feasor on a concerted action theory (see, Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co., 45 NY2d 551), who, in turn, could seek contribution from others who acted in concert with him, the distinguishing feature in our case is that this plaintiff has not relied upon the concerted action theory. In my view, in such case, a *162 defendant may not properly invoke the doctrine. To do so would unwisely permit the defendant to use as a shield against liability a theory of recovery devised to aid certain plaintiffs who, in its absence, could not obtain any relief. Such a result would be most inequitable.
In any event, no proof has been offered here of concerted action to commit a tortious act. There is neither claim nor proof of any inadequacy in terms of an industry-wide standard as to the design or manufacture of 28-ounce glass bottles. Other than the general, conclusory allegations in the third-party pleading, which are insufficient on this motion, nothing has been presented to reflect adherence to a dangerous industry-wide safety standard in relation to the manufacture of the claimed defective product.
Inasmuch as a motion for summary judgment empowers the court to search the record, even in the absence of a cross motion (Carroll v New York Prop. Ins. Underwriting Assn., 88 AD2d 527, lv dismissed 57 NY2d 774; Flaks, Zaslow & Co. v Bank Computer Network Corp., 66 AD2d 363; Davis v Shelton, 33 AD2d 707; Jelinek v City of New York, 25 AD2d 425; CPLR 3212 [b]) and to avoid multiple motions by the other third-party defendants, all of whom are in the same position as Foster, the third-party action is dismissed as against each of the third-party defendants. The third-party complaint contains the very same allegations against each third-party defendant manufacturer. Plainly, in light of the disposition reached herein, no useful purpose would be served, in terms of either the parties or the court, by requiring each manufacturer to separately move for summary judgment relief.
Accordingly, the motion by third-party defendant Foster for summary judgment dismissing Container’s third-party complaint is granted. The third-party complaint is stricken in its entirety.